STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
Assistant United States Attorney

PETER J. ANTHONY (NYBN 4940912)
Trial Attorney
U.S. Department of Justice Tax Division

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    michelle.kane3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 19-CR-00489-JST |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| OLEG TINKOV, | Sentencing: October 29, 2021 |
| Defendant. | Time: 9:30 a.m. |
| | Place: Via Zoom |

Pursuant to Criminal Local Rule 32-5(b), the United States respectfully submits its sentencing memorandum concerning defendant Oleg Tinkov. On October 1, 2021, defendant pleaded guilty to one count of willfully filing a false tax return in violation of 26 U.S.C. § 7206(1). Defendant and the government entered into a written plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C). ECF No. 25. Sentencing in this matter is scheduled to take place on October 29, 2021.

## FACTS AND PROCEDURAL HISTORY

Oleg Tinkov was born in Russia, moved to the United States in the 1990s, and became a naturalized citizen in 1996. Plea Agreement ¶ 2(a). In the mid-2000s, Tinkov returned to Russia and

founded Tinkoff Credit Services ("TCS"), one of the earliest online banks based in Russia. *Id*. Tinkov owned the majority of TCS's shares through Beckett Group Ltd., a British Virgin Islands entity. *Id*.

Around April 2013, Tinkov began the process of taking TCS public through an Initial Public Offering ("IPO") on the London Stock Exchange. *Id.* ¶ 2(b). TCS was listed on the London Stock Exchange on October 25, 2013, and it instantly became a multi-billion dollar publicly traded company. *Id.* ¶ 2(c). Tinkov received more than $192 million from the sale of his TCS stock. *Id.* ¶ 2(d). On October 27, 2013, one day before he formally relinquished his U.S. citizenship, Tinkov's stake in Beckett had a fair market value of $1.1 billion. *Id.* ¶ 2(d).

Tinkov's U.S. accountant advised him that expatriates are required to file a U.S. Initial and Annual Expatriation Statement, Form 8854, with the IRS and pay income tax if (as here) the expatriate's net worth is over $2 million and their assets have constructive gain. Tinkov filled out the Form 8854 himself listing his net worth as of his expatriation as just $300,000 even though he knew it to be substantially more. *Id*. Tinkov signed and caused the Form 8854 to be filed with the IRS on February 26, 2014. *Id.* ¶ 2(i).

In addition, Tinkov signed and filed a false individual U.S. federal income tax return listing his total income as only $205,317. *Id.* ¶ 2(j). By operation of the expatriation tax rules, Tinkov was required to report as income the amount of the gain from a constructive sale of all his assets, including his entire stake in TCS. Tinkov signed his individual income tax return under penalty of perjury knowing it was false. Tinkov's false submissions to the IRS caused a loss to the United States Treasury of $248,525,339.

On September 26, 2019, Tinkov was indicted under seal by a grand jury for two counts of willfully filing false tax returns in violation of 26 U.S.C. § 7206(1). Count 1 of the Indictment charged Tinkov with willfully filing a false Form 1040, U.S. Individual Income Tax Return, for calendar year 2013. Count 2 of the Indictment charged Tinkov with willfully filing a false Form 8854, Initial and Annual Expatriation Statement, for calendar year 2013.

Tinkov was arrested on February 26, 2020, in the United Kingdom, was incarcerated briefly, and then released on bond. His arrest coincided with the emergence of COVID-19 as a global pandemic. The United States sought extradition, and Tinkov moved in the UK courts to dismiss the extradition

SENTENCING MEMORANDUM
19-CR-00489-JST                                    2

proceedings on medical grounds.  As detailed in his submissions to this Court, in late 2019, Tinkov was diagnosed with acute myeloid leukemia ("AML"), a form of blood cancer.  He publicly disclosed his condition after his arrest on these charges.  After a stem cell transplant in late 2020, Tinkov developed chronic graft versus host disease, which requires he take medications that substantially compromises his immune system.  In July 2021, experts retained by both Tinkov and the UK Crown Prosecution Service ("CPS"), representing the United States in the extradition proceeding, concluded that his one- and two-year survival rate was low.  See Def's Mot. To Expedite Sentencing at 1, 5.  In addition, the experts, including CPS', concluded that Tinkov is "highly susceptible to life threatening infections," complicated by the on-going COVID-19 epidemic.  Id. at 5.  As of July 2021, the experts agreed that it would be at least one year before it would be medically safe for Tinkov to travel to the United States for this case, and that it was unclear when, if ever, he would be able to do so.  Id. at 8.

## UNITED STATES' SENTENCING RECOMENDATION

The parties have entered into a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure whereby Tinkov entered a felony plea to Count 1 of the Indictment and agreed to a detailed statement of facts laying out his criminal conduct, that is, the steps he took to willfully file false documents with the IRS in order to evade taxes he knew were due.  Tinkov agreed to pay no less than $506,828,377.  This includes $448,957,108 in restitution, comprised of $248,525,339 in taxes, statutory interest on that tax, and a nearly $100 million fraud penalty.  He also agreed to pay tax liabilities, interest, and additional penalties for other years that Tinkov acknowledged he owes.  Per the terms of the plea agreement, the parties have agreed to recommend a custodial sentence of time served, followed by one year of supervised release, and an additional fine of $250,000.  Tinkov has satisfied his monetary obligations under the plea agreement by paying to the United States $508,954,076.

The Government respectfully submits that based on the unique circumstances of this case, this is an appropriate and reasonable sentence and urges the Court to accept the proposed plea agreement and impose the sentence therein.

## SECTION 3553(a) FACTORS

Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3553, the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553(a)(2),

and, in so doing, the Court "shall consider," among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the Guidelines; (5) any pertinent policy statement; and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

The Government has a strong interest in deterring tax-motivated expatriations and Congress created a tax regime specific to those who seek to relinquish their U.S. citizenship. Under sections 877 and 877A of the Internal Revenue Code of 1986, and relevant here, a U.S. citizen who relinquishes their citizenship and has a net worth of over $2 million is deemed to have sold all their worldwide property on the date of their expatriation. 26 U.S.C. §§ 877A(g)(1)(A), (g)(2), and 877(a)(2)(B). The taxpayer then owes income tax on the gain from that constructive sale. *Id.* § 877A(a)(1). In addition, pursuant to § 6039G, a departing taxpayer must provide a statement to the IRS that details their income, assets, and liabilities. Form 8854 is that statement.

Ensuring compliance with these taxes is made difficult because once a person renounces their U.S. citizenship and moves abroad, the U.S.' access to that person is limited. Indeed, according to a 2019 audit report from the Treasury Inspector General for Tax Administration ("TIGTA"), "some high net worth individuals are not paying their exit tax." Treasury Inspector General for Tax Administration, 2020-30-071, *More Enforcement and a Centralized Compliance Effort Are Required for Expatriation Provisions* at 12 (2020). TIGTA reviewed the expatriation filings of 61 taxpayers who expatriated between 2017 and 2018 and had a combined net worth of $1.2 billion. *Id.* at 13. It determined that, based on the low percentage of reported capital gains compared to net worth, "it appears that these taxpayers failed to pay the required exit tax." *Id.* It is thus important that expatriating taxpayers be deterred from engaging in conduct similar to Tinkov's.

Under different circumstances, the Government would be before this Court arguing for a different sentence. But here, the unique confluence of Tinkov's health condition and the continuing global pandemic warrant a rare departure from the ordinary course. As the Court noted during the change of plea hearing, the court has "seen in [its] career many requests for leniency or continuances based on someone's medical condition, but. . . the medical records before [the Court] exceeds the record in any other case that [the Court] has seen." Transcript of Change of Plea Hearing, *United States v. Tinkov*, at 35:1-6. (October 1, 2021). In addition, the experts, including the expert retained by CPS on behalf of the United States, have concluded it is not medically safe for Tinkov to travel here in the foreseeable future. Given the chronic nature of his condition, the experts may never agree that he is fit to travel to the United States to face the charges in this case.

Further, as required by the plea agreement, Tinkov has already paid over $500 million in taxes, interest and penalties, more than double what he sought to escape paying to the U.S. Treasury through his fraudulent scheme. Considering this and the unique characteristics of this defendant in the context of the ongoing pandemic, the Government respectfully recommends that Tinkov's felony plea be fully accepted and that the Court impose the sentence agreed to by the parties, namely, time served, the maximum fine, one year of supervised release, restitution, and the special assessment. Such a sentence is appropriate in light of the § 3553(a) factors, and is sufficient, but not greater than necessary, to fulfill the goals of sentencing.

DATED: October 21, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

/s/ Michelle J. Kane
MICHELLE J. KANE
Assistant United States Attorney

/s/ Peter J. Anthony
PETER J. ANTHONY
Trial Attorney
U.S. Dept. of Justice, Tax Division